IN THE UNITED STATES DISTRICT COURT

NORTHERN DIVISION, DISTRICT OF UTAH

| | | |
|---|---|---|
| VICKIE PENICHTER, | : | Case No. 1:06 CV 0156 TS |
| Plaintiff, | : | |
| vs. | : | REPORT AND RECOMMENDATION |
| MICHAEL ASTRUE, Commissioner of Social Security, | : | Judge Ted Stewart |
| Defendant. | | Magistrate Judge Brooke C. Wells |

Plaintiff Vickie K. Penichter (Penichter) initially applied for disability insurance benefits on April 24, 2003, alleging that she was disabled on February 3, 2003.  ("R." 45-48).  Her application was denied on July 29, 2003 and upon reconsideration on January 26, 2004.  ("R." 29-32, 50-52).  Penichter timely requested and was granted a hearing before the administrative law judge (ALJ); that hearing was held on August 11, 2005.  (""R. 265-306).  At the hearing, Plaintiff amended the alleged onset date of her disability to March 1, 2004.  ("R." 279, 391).  Penichter appeared and testified before the ALJ as did Kenneth Lister, a qualified vocational expert.  ("R." 271-305).  Steven LaViola, M.D., testified by telephone.  ("R." 267-271).   On March 29, 2006, the ALJ issued a written decision denying the claim.  ("R". 19-25).   Plaintiff timely appealed the ALJ's decision.  ("R." 13-14, 257-258).  The Appeals Council denied the

1

request for review on December 6, 2006 resulting in this appeal. ("R." 6-9).

For the reasons stated below, this court concludes there is not substantial evidence in the record to support the ALJ's conclusion that Claimant should be denied benefits. Accordingly, the court recommends the matter be remanded for further consideration by the ALJ consistent with this opinion or an award of benefits if appropriate.

STATEMENT OF FACTS

Medical History

Penichter seeks judicial review of the determination of the Commissioner of Social Security denying her application for Social Security disability insurance benefits. Penichter, born in 1954, is a high school graduate with past relevant employment as a retail manager, ticket taker and retail cashier. ("R." 271, 399).

In 1997, Penichter had aorta bifemoral bypass surgery after suffering lower extremity claudication and blood pressure problems. ("R." 116-118). The surgery was performed by Dr. Steven C. Simper, M.D. Between 2001 and 2004, she was diagnosed with atherosclerosis, some stenosis in the right carotid artery, stenosis at the aortobifemor graft, spinal stenosis, anxiety and depression. ("R." 212-214, 206, 144, 156, 239). Penichter was seen for her various conditions at the "Health Clinics of Utah" located in Ogden by several physicians and health care professionals including Certified Family Nurse Practitioner (CFNP) Virginia Mol. At least 18 visits to the Health Clinics of Utah are documented between January, 2003 and April 2005. ("R." 122, 141, 173-194, 223-235). She was prescribed a variety of medications, treatment and exercise regiments, directions with which she didn't always comply for various reasons including lack of medical insurance. ("R." 238, 259-261 ). She continued to report experiencing claudication in

2

both arms and legs, numbness and swelling, a need to elevate her feet and an inability to undertake projects requiring hand dexterity.  ("R." 120, 125, 273, 278, 293, 296).

In February and March of 2003 (prior to Penichter's amended onset date of March 1, 2004), two medical health professionals, CFNP Viriginia Mol, Health Clinics of Utah and Dr. Crawford, M.D., of the Columbia Ogden Regional Medical Center/Utah Cardiology, completed independent Workplace Functional Ability Medical Report forms.  ("R." 129, 110).  CFNP Mol concluded Penichter was not capable of working based upon her cardiac condition and recommended that she follow up with a cardiologist for further evaluation.  ("R."110).  In March, Dr. Crawford concluded Claimant could begin working full-time but noted his opinion was based solely on Penichter's cardiac condition.  ("R." 107-108).  On July 29, 2003, a medical consultant (signature illegible) from the Utah agency Disability Determination Service or DDS completed a "Residual Functional Capacity Assessment - Physical" form based on the evidence in the record. ("R." 158-165).  This consultant's handwritten notes are limited to a notation "see case summary" (the content of which is unintelligible to the court's eye but not controverted by the parties). ("R." 165).  The medical consultant apparently concluded Penichter could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; with an unlimited ability to push and/or pull.  ("R". 159, 199).

On March 9, 2004, Dr. Kurt Rifleman, also of Health Clinics of Utah, and CFNP Viginia Mol wrote in a letter addressed to Claimant's counsel that her primary complaints included claudication-type pain with muscle cramping within 15 minutes of activity.  ("R." 239).   The letter recited Penichter's "current" diagnoses as hypertension, hypothyroidism, severe peripheral

vascular disease, coronary artery disease and anxiety disorder confirmed through laboratory results, peripheral doppler studies and angiography. (Id.). The authors opined that Ms. Penichter's complaints should be considered credible and that she should not lift more than 10 pounds or do any sustained sitting, standing or walking. (Id.) If she did return to work, it should be sedentary in nature with necessary unpredictable rest periods and expected absences of 10 to 15 days a month. (Id.) They further opined she could only sit three hours per day, be on her feet two hours per day and would need over 20 unscheduled daily breaks. ( Id.) It was signed "Thank you for your help on Ms. Penichter's behalf." (Id.).

Penichter was referred by the Utah Health Clincs and Mol to Dr. Steven Simper, her cardiac surgeon in 1997, for further examination and testing. ("R." 239). Referral examinations and testing were conducted subsequent to the disability onset date. ("R." 205-209). A peripheral vascular study on March 18, 2004, showed bilateral arterial insufficiency of both lower extremities. (Id.) She was seen for low back and left sciatic pain on April 12, 2004 and was diagnosed with lumbar facet arthropathy. ("R." 238). She was also periodically treated for anxiety and depression at the Ogden Clinic and Health Clincs of Utah. ("R." 238)

ALJ Analysis

At step two of the required sequential evaluation process the ALJ found Penichter to have severe impairments (hypertension, hypothyroidism, peripheral vascular disease, coronary artery disease and degenerative disc disease) but no impairment or combination of impairments that meet or medically equal a listed impairment.[1] The ALJ also found Penichter's complaints

---

[1]Tr. 21-22; Findings No. 3, 4

and testimony not credible.[2]  At step four, the ALJ found Penichter has the residual functional

capacity (RFC) to return to her past relevant work.[3]  Thus, the ALJ found Penichter not to have

been under a disability within the meaning of the Social Security Act at any time through the date

of the decision.

DISCUSSION

This Court's review of the ALJ's decision is limited to determining whether his findings

are supported by substantial evidence and whether the correct legal standards were applied.[4]

Penichter contends the ALJ's decision should be reversed for the following reasons:

the ALJ improperly evaluated the opinions of  Penichter's treating physician, failed to properly

evaluate Penichter's credibility and failed to properly evaluate her residual functional capacity.

If supported by substantial evidence, the findings of the ALJ are conclusive and must be

affirmed. [5]  Substantial evidence means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."[6]  The ALJ is not required to discuss all of the

evidence.[7]  But, each factual finding must be supported by substantial evidence.[8]

The Court is required to evaluate the record as a whole including evidence before the ALJ

---

[2]Tr. 22; Finding No 5.

[3]Tr. 22-23, Finding No. 5, 6

[4]See *Rutlege v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[5]See *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[6]*Clifton v. Chater,* 79 F. 3d 1007, 1009 (10th Cir. 1996).

[7]*Id.*

[8]See *Haddock v. Apfel*, 196 F.3d 2084, 2088 (10th Cir. 1999).

that detracts from the weight of the ALJ's decision.[9]   The reviewing court, however, should not

re-weigh the evidence or substitute its judgment for that of the ALJ's.[10]   When there is a failure

to apply the correct legal test, then there are grounds for reversal apart from a lack of substantial

evidence.[11]   "While a claimant's credibility is generally an issue reserved to the ALJ, the issue is

subject to review to ensure that the underlying factual findings are 'closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings.'"[12]

<u>The ALJ improperly evaluated the opinion of Claimant's treating physician.</u>

Claimant argues the ALJ did not properly evaluate the opinion of Claimant's treating

physician and health care providers at step three of the required analysis.  The ALJ concluded

Claimant does not have an impairment or combination of impairments that meet or medically

equal one of the listed impairments.  In Finding No. 4, which addresses the specific question of

whether Claimant's impairments meet or equal a listing, the ALJ states:

> 4.)  Dr. LaViola, ME, testified that the condition does not equal any listing under
> 4.00 series.
>
> I have considered the requirements of the 1.02 series for musculoskeletal
> impairments, but the claimant does not have involvement of a joint resulting
> in an inability to ambulate effectively or perform fine and gross movements
> effectively.  The claimant also does not have the nerve root compression,
> spinal arachnoiditis or lumbar spinal stenosis required to meet listing 2.04.
> ("R." 22).

---

[9]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[10]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[11]See *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)

[12]*Swanson v. Barnhart,* 2006 WL 2147557, *1 (20th Cir. 2006) (quoting *Hackett v.
Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

In making the finding that Claimant does not have a qualifying impairment, the ALJ relies totally on the testimony of Dr. LaViola and the ALJ's own conclusion that Claimant's condition "fails to meet listing 1.04."[13]  The ALJ fails to reference the diagnoses or opinions of Dr. Rifleman and CFNP Moll in reference to finding No. 4.  Instead, the ALJ only addresses these opinions in reference to the analysis of Claimant's RFC in subsequent Finding No. 5.  ("R." 23).  Dr. Simper's opinions, who is specifically identified as Claimant's treating physician, are likewise ignored in the ALJ's finding No. 4.  (Id.)  Nor in his findings does the ALJ contemplate any need for clarification as to who else may be considered a treating physician or what opinions should be considered.  Therefore, the court finds that the ALJ improperly rejected Claimant's treating source opinions in making his step three analysis.  When the medical opinions of treating physicians are completely rejected, the ALJ must give "specific, legitimate reasons"[14] for doing so.  "In choosing to reject [an] opinion, an ALJ may not make speculative inferences from medical reports and may reject a treating physician only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[15] Here, the ALJ only discusses Dr. Rifleman and CFNP Mol's submission in Finding No. 5-which relates to Claimant's RFC- and discredits their opinions without much explanation.  The ALJ states that Dr. Rifleman may have had "scant" dealings with Claimant; CFNP Mol had only seen Claimant on four occasions since the amended onset date; and the letter was an attempt to

---

[13]Prior to the testimony of Dr. LaViola, the ALJ disclosed that Dr. LaViola is his personal treating cardiologist.  The Claimant made no objection to Dr. LaViola's involvement in the case. ("R. 267-268).

[14]See *Watkins v. Barnhart*, 350 F.3d at 1301.

[15]*Id.* at 1301.

advocate on behalf of Claimant.  ("R." 23 ).  Because the ALJ failed to give "specific, legitimate reasons" why the opinions of Claimant's healthcare providers were not considered in the Step 3 analysis, the Court finds the ALJ's opinion as to this finding not supported by substantial evidence in the record.

<u>The ALJ improperly evaluated Claimant's credibility</u>

_____The ALJ must explain why specific relevant evidence leads to a conclusion that a claimant's subjective complaints were not credible.[16]  The legal standard for evaluating a claimant's pain and the resulting functional limitations require the ALJ to perform a three-pronged analysis: (1) whether claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and a claimant's subjective allegations; and (3) whether in considering all the evidence, both subjective and objective, the claimant's symptoms are in fact disabling.[17]

Penichter was determined to be not credible.  The ALJ's opinion stated:

> After considering the evidence of record, the undersigned finds . . . claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not credible.  For example, although the claimant reported pain and great difficulty moving, she denied any specific pain, numbness or tingling to her treating health care provider.  (Exhibit 13F/3).  She was encouraged to exercise more. (Exhibit 16F/1).

To satisfy step 3 of the required analysis, the ALJ must review all of the subjective and objective evidence in the record to determine if Claimant's symptoms are disabling.  The record

_____

[16]See *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2004).

[17]See *Thompson*, 987 F.2d at 1482.

does not support the ALJ's conclusion at this step which led to a finding that Claimant is not credible.[18]  Review of the Exhibit 13F/3 (the example relied upon by the ALJ in making a negative credibility determination) states that on May 3, 2004, Claimant sought a medical consultation at Health Clinics of Utah related to prescription refills for her conditions of anxiety, muscle and joint pain, high blood pressure and menopause.  Consistent with her previous history, Exhibit 13F/3 reflects Claimant reported continued weakness, claudication and decreased circulation.  During the visit she also disclosed she had fallen down some stairs which may have increased her pain.  While Penichter described generalized increased muscle and joint pain she denied specific pain, numbness or tingling related directly to the fall.  The ALJ relied on this incident, along with Claimant's admissions of not always following prescription regiments for anxiety or engaging in recommended exercise, in concluding Claimant lacked credibility. ("R." 22; Finding 5).  The ALJ's opinion did not correctly address the nature and frequency of medical contacts with the treating sources at Health Clinics of Utah except to note that since the onset date, Penichter had seen CFNP Moll on only four occasions.  ("R." 23).  It is clear that the ALJ gave less weight to Penichter's medical records before the alleged onset date of March 1, 2004. ("R." 23).

Factors to be considered by the ALJ when determining the credibility of allegations include:

> levels of medication and effectiveness, extensiveness of both medical or non-medical attempts to obtain relief, frequency of medical contacts, nature of daily activities, subjective measure of credibility peculiarly within the judgment of the ALJ, motivation and relationship between claimant and other witness, and consistency or compatibility of

---

[18]*See id.*

9

non-medical testimony with objective medical evidence.[19]

The ALJ must explain why specific relevant evidence led him to conclude the claimant's subjective complaints were not credible.[20]  Here, the ALJ's opinion cites a selected portion of an exhibit which when read as a whole contradicts or at minimum does not support the ALJ's finding.  Further, the ALJ fails to address the length and nature of the treating relationship between Claimant and her treatment providers.  Thus, the court adopts Claimant's argument that in this case the ALJ failed to link the evidence to credibility findings and failed to consider the factors required in evaluation.

<u>The ALJ failed to properly evaluate Claimant's residual functional capacity</u>

In finding that Penichter has the RFC to perform a full range of light work, the ALJ specifically discounted the contrary opinions of Dr. Kurt Rifleman, M.D., and nurse practitioner Viginia Mol that Penichter could at best only perform work of a sedentary nature with minimal hours and frequent absences.  ("R." 239; Ex. 14F).   In rejecting their opinions, the ALJ states:

> The undersigned has also reviewed a letter from Dr. Kurt Rifleman, which is also signed by nurse practitioner Virginia Mol (Exhibit 14F).  There is scant evidence that Dr. Rifleman has examined or treated the claimant during the period at issue.  Nurse practitioner Mol only appears to have seen the claimant four times in the more than two years since the claimant's current alleged onset date.  Although this letter concludes that the claimant would not even be able to perform sedentary work, it is not consistent with the treating records from this medical group.  It appears to be unduly based on the claimant's subjective reports for disability purposes, which are not even fully supported by her usual reports to her health care providers.  The undersigned also rejects this treating source's opinion for the following reasons: there are

---

[19]*Id.* at 1489.

[20]See *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

10

> inconsistencies between the opinion and clinical and laboratory
> findings; the physician is advocating on the claimant's behalf, there
> are inconsistencies between the doctor's opinion and the claimant's
> daily activities; and the opinion is unsupported, brief and/or
> conclusory and contradictory.  Compare 14F with 13F3 by the
> same author two months later. ("R." 23).

A review of the ALJ's written opinion as to Claimant's RFC reveals a number of problems including: the ALJ is incorrect is his conclusion that Dr. Rifleman and CFNF Mol stated Claimant is unable to perform even sedentary work.  Rather the letter states: "<u>If she was able to work at all, it would be in a sedentary type job</u> (emphasis added), with minimal hours, and would likely have frequent absences."   It is unknown how the ALJ's analysis would have differed had the letter been correctly interpreted.

The ALJ's opinion also references inconsistent treatment records but does not identify any inconsistencies.

In contrast to the opinions of Dr. Rifleman and CFNP Moll with whom Plaintiff had a standing medical relationship, the ALJ's opinion adopts the DDS's brief and conclusory opinion and cites the following, and <u>only</u> the following, in support of a finding that Penichter is capable of performing her past relevant work:[21]

> The Disability Determination Service ("DDS") consulting physician
> concluded that the claimant can perform a full range of light work.  The
> undersigned gives great weight to this assessment, as it is consistent with
> substantial evidence of record."  ("R." 23).

This court's own review of the DDS physician's report and referenced case summary dated July 19, 2003, (a date prior to Penichter's amended disability onset date) finds a check-box

---

[21]See *Frey v. Bowen*, 816 F.2d 508, 514 (10th Cir. 1987) (check-the-box forms from a non-examining physician, standing alone, unaccompanied by thorough written reports or persuasive testimony are not substantial evidence).

printed form which summarily states a conclusion and then references a "case summary"-- itself primarily unreadable and virtually undecipherable to this Court. ("R." 158-165, 199).   The form report and attendant "case summary" to which the ALJ  "give[s] great weight" is from an undetermined author, is illegibly handwritten, less than a page in length with no discernable references to any medical history or record.  ("R". 199).  Moreover, the DDS physician did not even examine or interview Penichter.[22]  Thus, the ALJ's adoption of the DDS's conclusion without narrative discussion linking the RFC to evidence of record is contrary to Social Security Administration regulations and case law.[23]  Reliance on a check-the-box form from a non-examining physician unaccompanied by thorough written reports or persuasive testimony is not substantial evidence and constitutes error.  Finally, the fact that CFNP Moll has treated Plaintiff as a nurse practitioner, rather than as a physician, is not in and of itself a valid reason to not consider Moll's opinions regarding Claimant.  Moll treated Claimant over a significant period of time for a number of medical conditions and had the concurrent opinion of a clinic physician.  Therefore, Moll's opinions concerning Claimant's RFC should have been given appropriate weight.[24]

CONCLUSION

Based on the foregoing, the court recommends that the decision of the Commissioner be

---

[22]See *Kesner v. Barnhart*, 470 F.Supp.2d 1315 (10th Cir. 2006) (substantial evidence did not support the ALJ's decision to discount the RFC opinion of treating physician without specific, legitimate reasons and the ALJ relied on single consultative exam performed by a non-treating source).

[23]Social Security Rule 96-8p; *Nielson v. Sullivan*, 992 F.2d 1118, 1120-1122 (10th Cir. 2993); 20 C..F.R. 402.35(b)

[24]See Social Security Ruling 06-3p.

reversed and this case be remanded for further reconsideration.  Copies of this report and

recommendation are being mailed to all parties who are hereby notified of their right to object.

The parties must file any objection to the report and recommendation within ten days after

receiving it.  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 25th day of January, 2008.


BY THE COURT:


Brooke C. Wells
United States Magistrate Judge